Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
msobol@lchb.com

Daniel M. Hattis (State Bar No. 232141)
HATTIS LAW
9221 NE 25th Street
Clyde Hill, WA 98004
Telephone: (650) 980-1990
dan@hattislaw.com

Tina Wolfson (State Bar No. 174806)
Robert Ahdoot (State Bar No. 172098)
Theodore W. Maya (State Bar No. 223242)
AHDOOT & WOLFSON, P.C.
1016 Palm Avenue
West Hollywood , California 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MCAFEE, INC.,<br><br>Defendant. | Case No. 5:14-cv-00158-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 18, 2016<br>Time: 10:00 a.m.<br>Honorable Edward J. Davila |

1308849.6

NOTICE OF MOT. AND MOT. FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

1  | SAMANTHA KIRBY, individually and on | Case No.  5:14-cv-02475-EJD
   | behalf of all others similarly situated,

2

3  |                      Plaintiff,

4  | v.

5  | MCAFEE, INC.,

6  |                      Defendant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1308849.6

NOTICE OF MOT. AND MOT. FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 18, 2016, at 10:00 a.m., in the Courtroom of the Honorable Edward J. Davila, United States District Judge for the Northern District of California, 280 South 1st Street, 5th Floor, Courtroom 4, San Jose, CA 95113, Sam Williamson and Samantha Kirby, plaintiffs in the above-captioned cases ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

    a.    Granting preliminary approval of a proposed Class Action Settlement Agreement and Release ("Settlement Agreement") entered into between the parties;[1]

    b.    Certifying, for settlement purposes only, the proposed Auto-Renewal Class and Reference Price Class, as defined in the Settlement Agreement;

    c.    Appointing Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, P.C., as Class Counsel representing the Auto-Renewal Class and Reference Price Class;

    d.    Appointing Plaintiffs Sam Williamson and Samantha Kirby as class representatives representing the Auto-Renewal Class and Reference Price Class;

    e.    Approving the parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement Agreement, and directing that notice be disseminated pursuant to such program;

    f.    Appointing Angeion Group ("Angeion") as Settlement Administrator, and directing Angeion to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement;

    g.    Approving the parties' proposed Cash Election form, and approving the procedures set forth in the Settlement Agreement for the submission of Cash Elections, for

---

[1] The Settlement Agreement is being submitted as Exhibit A to the Declaration of Roger N. Heller, filed herewith.

-1-

1    Class Members to exclude themselves from the Auto-Renewal Class and/or Reference Price

2    Class, and for Class Members to object to the Settlement;

3                          h.      Staying all non-Settlement related proceedings in the above-

4    captioned cases pending final approval of the Settlement Agreement; and

5                          i.      Setting a Final Fairness Hearing and certain other dates in

6    connection with the final approval of the Settlement Agreement.

7         This motion is based on this notice of motion and motion, the accompanying

8    memorandum of points and authorities, the Settlement Agreement, including all exhibits thereto,

9    the accompanying declarations of Roger N. Heller ("Heller Decl."), Daniel Hattis ("Hattis

10   Decl."), Tina Wolfson ("Wolfson Decl."), and Steven Weisbrot ("Weisbrot Decl."), the argument

11   of counsel, all papers and records on file in these cases, and such other matters as the Court may

12   consider.

13   Dated:  July 14, 2016              By:   */s/ Roger N. Heller*_____

14                                      Michael W. Sobol
                                        Roger N. Heller
15                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                        275 Battery Street, 29th Floor
16                                      San Francisco, CA  94111-3336
                                        Telephone: (415) 956-1000
17
                                        By:   */s/ Daniel M. Hattis*_____
18
                                        Daniel M. Hattis
19                                      HATTIS LAW
                                        9221 NE 25th Street
20                                      Clyde Hill, WA 98004
                                        Telephone: (650) 980-1990
21
                                        By:   */s/ Robert Ahdoot*_____
22
                                        Tina Wolfson (State Bar No. 174806)
23                                      Robert Ahdoot (State Bar No. 172098)
                                        Theodore W. Maya (State Bar No. 223242)
24                                      AHDOOT & WOLFSON, P.C.
                                        1016 Palm Avenue
25                                      West Hollywood , California 90069
                                        Telephone: (310) 474-9111
26
27                                      *Attorneys for Plaintiffs*

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.     INTRODUCTION ............................................................................... 1

II.    BACKGROUND ................................................................................. 2

    A.   Procedural History ................................................................. 2

    B.   Class Counsel's Investigation and Discovery ....................... 3

    C.   Settlement Negotiations ......................................................... 4

III.   THE PROPOSED SETTLEMENT AND NOTICE PROGRAM ......... 5

    A.   The Settlement Classes .......................................................... 5

    B.   Benefits to the Class Members .............................................. 5

        1.   $11.50 Settlement Benefit for All Auto-Renewal Class Members ................................................................................. 5

        2.   Practice Changes ........................................................ 6

    C.   Notice Program ...................................................................... 7

        1.   Direct Notice to Class Members ................................ 7

        2.   Settlement Website and Toll-Free Number ................ 8

    D.   Opt-Out Procedures ............................................................... 8

    E.   Objection Procedures ............................................................. 9

    F.   Payment of Administrative Costs ........................................... 9

    G.   Payment of Attorneys' Fees and Costs ................................. 9

    H.   Service Awards for the Plaintiffs ........................................... 9

    I.   Release .................................................................................... 9

IV.   ARGUMENT ...................................................................................... 10

    A.   The Class Action Settlement Approval Process .................... 10

    B.   Certification of the Proposed Classes is Appropriate ............ 10

        1.   Rule 23(a) is Satisfied .............................................. 10

        2.   Rule 23(b)(3) Is Satisfied ......................................... 12

    C.   Preliminary Approval of the Settlement Is Appropriate ........ 13

        1.   The Settlement Is the Product of Arms-Length Negotiations After a Thorough Investigation .................................... 14

        2.   The Settlement Is Fair, Reasonable, and Adequate Given the Alleged Harm and the Potential Risks of Ongoing Litigation ...... 15

        3.   The Recommendation of Experienced Counsel Favors Approval ...................................................................... 17

    D.   The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved ........................................................... 17

1308849.6

- i -

NOTICE OF MOT. AND MOT. FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT; MPA
CASE NOS. 5:14-CV-00158-EJD; 5:14-CV-02475-EJD

**TABLE OF CONTENTS**
(continued)

Page

E.      The Court Should Schedule a Final Fairness Hearing and Related
        Dates......................................................................................................... 18

V.      CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 12

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ............................................................................... 11

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................... 13, 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................... 13, 14

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................ 14

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 11, 12, 13

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................................. 14

*In re Juniper Networks Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ........................................................................ 11

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................. 13

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ................................................................ 13

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) ...................... 11

*Knight v. Red Door Salons, Inc.*,
   2009 U.S. Dist. WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................ 17

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ....................................................... 17

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................................. 13

*Otsuka v. Polo Ralph Lauren Corp.*,
   251 F.R.D. 439 (N.D. Cal. 2008) ........................................................................ 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................................ 11

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 10
Fed. R. Civ. P. 23(a)(3) ............................................................................................ 11
Fed. R. Civ. P. 23(b)(3) ............................................................................................ 12
Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 17
Fed. R. Civ. P. 23(e)(2) ............................................................................................ 13

**Treatises**

1 Newberg § 3.10 ..................................................................................................... 11
4 Newberg on Class Actions (4th ed. 2002),
   § 11.22 *et seq.* ....................................................................................... 10, 13, 14
Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004),
   §§ 21.63 *et seq.* ......................................................................................... 10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   <u>INTRODUCTION</u>

Plaintiffs in the above-captioned cases (collectively, the "Litigation") respectfully submit for the Court's preliminary approval a proposed Class Action Settlement Agreement and Release ("Settlement Agreement") resolving this Litigation.   Pursuant to the proposed Settlement Agreement, defendant McAfee, Inc. ("McAfee") will provide an $11.50 Settlement Benefit to all members of the Auto-Renewal Class—each of whom may choose to receive such benefit as cash, or otherwise will receive it as a McAfee value certificate good towards the purchase of McAfee or Intel Security consumer products.   The $11.50 amount represents approximately one-half of the average alleged overcharge for auto-renewal transactions during the class period, as estimated by Plaintiffs.   In the aggregate, the $11.50 Settlement Benefits total more than $80 million.   In addition, McAfee has agreed to implement important changes regarding both auto-renewal transactions and its advertising of reference prices.

The Settlement Agreement is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel, assisted by an experienced mediator, Eric Green of Resolutions LLC, and is absolutely fair, reasonable, and adequate given the claims, the relief sought, and the parties' respective litigation risks.   The Settlement Agreement falls well within the "range of reasonableness" applicable at the preliminary approval stage.

Moreover, the Settlement Agreement provides for a robust, multi-pronged notice program that is well-tailored to provide Class Members the best notice practicable of the pendency of the Litigation, the terms of the Settlement Agreement, Class Counsel's fee and cost application, and Class Members' opt-out rights and rights to object.   Further, McAfee will pay for the costs of the Settlement Administrator, including the costs of notice and distributing the Settlement Benefits, in addition to (*i.e.,* on top of) the other benefits of the Settlement Agreement.

Plaintiffs and their undersigned counsel believe the Settlement Agreement to be in the best interests of the Class Members and seek to begin the Court approval process that is required for all class action settlements.   Plaintiffs therefore respectfully request that the Court review the Settlement Agreement, which is attached as Exhibit A to the accompanying Heller Decl., and do

the following:

1. Grant preliminary approval of the Settlement Agreement;

2. Certify, for settlement purposes only, the proposed classes, as defined in the Settlement Agreement;

3. Appoint Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, P.C., as Class Counsel;

4. Appoint Plaintiffs Sam Williamson and Samantha Kirby as class representatives;

5. Approve the parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement Agreement, and direct that notice be disseminated pursuant to such program;

6. Appoint Angeion Group ("Angeion") as Settlement Administrator, and direct Angeion to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement;

7. Approve the parties' proposed Cash Election form, and approve the procedures set forth in the Settlement Agreement for the submission of Cash Elections, for Class Members to exclude themselves from the classes, and for Class Members to object to the Settlement;

8. Stay all non-Settlement related proceedings in the Litigation pending final approval of the Settlement Agreement; and

9. Set a Final Fairness Hearing and certain other dates in connection with the final approval of the Settlement Agreement.

## II.   BACKGROUND

### A.   Procedural History

This Litigation began in early 2014.  The first-filed *Williamson* case was filed in this Court on January 10, 2014, alleging claims on behalf of two nationwide classes of McAfee customers: (1) a "Class" of customers who incurred charges for the automatic renewal of their McAfee software ("auto-renewal"); and (2) a "Reference Price Class" consisting of customers

who made purchases of McAfee software where McAfee advertised a "reference price" for the product.  Plaintiff Williamson alleged that the prices McAfee charged for auto-renewal were higher than its disclosures indicated they would be, and that McAfee's advertised reference prices were misleading in that they allegedly did not represent McAfee's true former selling prices.  Plaintiff sought damages, restitution, and injunctive relief on behalf of the Class of auto-renewal customers, and injunctive relief on behalf of the Reference Price Class. (*Williamson* Dkt. 1)

On March 7, 2014, McAfee filed a motion to dismiss the initial complaint in the *Williamson* case. (*Williamson* Dkt. 21)  Plaintiff Williamson filed an opposition to McAfee's motion on April 11, 2014, and McAfee filed its reply on May 2, 2014. (*Williamson* Dkt. 25, 27)

The *Kirby* case was filed on May 29, 2014 on behalf of a nationwide class of McAfee auto-renewal customers, alleging claims that overlapped in significant part with certain of the claims alleged in the *Williamson* case. (*Kirby* Dkt. 1)  On July 1, 2014, the *Kirby* case was formally related to the *Williamson* case, and assigned to this Court, pursuant to Civil Local Rule 3-12. (*Kirby* Dkt. 16)

On August 22, 2014, the Court entered an Order in the *Williamson* case granting in part and denying in part McAfee's motion to dismiss. (*Williamson* Dkt. 40)  On September 8, 2014, Plaintiff Williamson filed a First Amended Complaint ("FAC"). (*Williamson* Dkt. 42)  On October 9, 2014, McAfee filed a motion to dismiss the FAC. (*Williamson* Dkt. 48)  Plaintiff Williamson filed an opposition to McAfee's motion on November 4, 2014, and McAfee filed its reply on November 25, 2014. (*Williamson* Dkt. 54, 59)  On March 2, 2015, the Court took McAfee's motion to dismiss the FAC under submission. (*Williamson* Dkt. 66).

On July 8, 2015, the parties in the *Williamson* and *Kirby* cases notified the Court that they had reached an agreement in principle on certain deal terms for a class settlement, and on July 9, 2015, at the parties' request, the Court entered an Order staying proceedings in the two cases pending the filing of a proposed class settlement. (*Williamson* Dkt. 69, 70)

**B.** **Class Counsel's Investigation and Discovery**

Proposed Class Counsel conducted a particularly extensive investigation prior to filing suit.  Among other efforts, Class Counsel used a sophisticated, self-developed tracking

1  mechanism to compile and analyze daily pricing and discount information directly from

2  McAfee's and other retailers' websites.  Every day for approximately two years before the initial

3  *Williamson* complaint was filed, and continuing throughout the litigation, Class Counsel collected

4  daily screenshots and pricing and discount information from McAfee's website for the software

5  products at issue in this Litigation, as well as similar information from the websites of other

6  retailers.  Class Counsel conducted analyses of the information gathered through this means.

7  Class Counsel also spoke with more than two dozen McAfee customers about their experiences,

8  carefully analyzed McAfee's consumer agreements and pertinent disclosures, and conducted

9  extensive legal research regarding potential legal claims.  Class Counsel's investigation and

10  research have continued since Plaintiffs filed suit, including continuing to track the information

11  from McAfee's website and ongoing extensive legal research.  Heller Decl., ¶ 11; Hattis Decl., ¶¶

12  8-9.

13       Further, Class Counsel have engaged in significant discovery, including:  reviewing and

14  conducting a detailed analysis of class-wide McAfee pricing and transactional data for the

15  relevant time period (which included millions of individual transaction records); reviewing

16  McAfee's historical consumer agreements and other important documents; propounding and

17  responding to written discovery requests; and engaging in numerous meet and confer sessions

18  regarding McAfee's electronic document and data systems and Plaintiffs' requests for production

19  of documents.  Heller Decl., ¶ 12; Hattis Decl., ¶¶ 8-9.

20       **C.**    <u>**Settlement Negotiations**</u>

21       The Settlement Agreement here is the product of hard-fought, arms-length negotiations

22  between the parties.  The parties engaged in a full-day mediation session with Eric D. Green of

23  Resolutions, LLC on April 8, 2015.  Following that session, the parties continued to negotiate

24  through Prof. Green and, with his assistance, were able to reach an agreement in principle on

25  certain terms in July 2015.  During the subsequent months, the parties continued to negotiate

26  through the mediator, holding numerous teleconferences with Prof. Green.  With Prof. Green's

27  assistance, the parties ultimately were able to reach an agreement in principle on deal terms.

28  After an agreement in principle was reached on the claims, the parties, with the further assistance

1   of Prof. Green, reached an agreement regarding Class Counsel's request for attorneys' fees and

2   costs.  Since that time, the parties have worked diligently on finalizing the settlement papers,

3   including the forms of notice and other exhibits, and selecting a proposed Settlement

4   Administrator.  Heller Decl., ¶ 13.

5   **III.     THE PROPOSED SETTLEMENT AND NOTICE PROGRAM**

6          **A.     The Settlement Classes**

7          Plaintiffs seek provisional certification of an "Auto-Renewal Class," defined in the

8   Settlement Agreement as:

9                 All persons in the United States who paid McAfee for the automatic
                  renewal of a subscription license for any McAfee software
10                (including software branded under the "McAfee" or "Intel
                  Security" names) from January 10, 2010 to February 10, 2015, and
11                whose first auto-renewal charge was at a price greater than the price
                  paid to McAfee for the initial subscription license.  The Auto-
12                Renewal Class shall not include any person whose charges as
                  described above were fully refunded by McAfee or fully charged
13                back through such person's credit or debit card issuer.

14         Plaintiffs also seek provisional certification of a "Reference Price Class," defined in the

15  Settlement Agreement as:

16                All persons in the United States (1) who initially purchased from
                  McAfee or manually renewed through McAfee a subscription
17                license for any McAfee software (including software branded under
                  the "McAfee" or "Intel Security" names) from January 10, 2010 to
18                February 10, 2015, and (2) whose subscription license was initially
                  purchased or manually renewed at a discounted price.
19

20  Excluded from both classes are employees of McAfee and its parents and affiliates, counsel for

21  all parties, the Court, and the Court's staff.  McAfee does not oppose certification of the above

22  classes for settlement purposes only.  (Settlement, ¶¶ 1-4)

23         **B.     Benefits to the Class Members**

24                **1.     $11.50 Settlement Benefit for All Auto-Renewal Class Members**

25         Pursuant to the Settlement Agreement, all Class Members in the Auto-Renewal Class will

26  receive an $11.50 Settlement Benefit.  They each will have the option of receiving the $11.50

27  benefit as: (a) cash; or (b) an $11.50 McAfee value certificate.  They can choose the cash option

28  by submitting a simple Cash Election form, and may submit Cash Election forms electronically

via the Settlement Website or by mail. The Cash Election form will be substantially in the form attached as Exhibit 8 to the Settlement Agreement. The deadline for submitting Cash Election forms will be 70 days after the Notice Date. For Cash Election forms submitted online, Class Members will have the choice of receiving their cash payment either as a check or as a direct credit to their PayPal account. For Cash Election forms submitted by mail, payments will be by check. Class Members in the Auto-Renewal Class who do not submit a timely and valid Cash Election form will receive an $11.50 McAfee value certificate (in the form of an electronic code), good towards the purchase of McAfee or Intel Security consumer products. (Settlement, ¶¶ 28-35)

### 2.    Practice Changes

McAfee has also agreed to implement important practice changes addressing both the auto-renewal pricing and reference price allegations in the Litigation. Specifically, McAfee has agreed to implement the following for two years after the Settlement Agreement receives final approval by the Court:

(1) McAfee will include at the point of sale in any sales process involving sales made by McAfee  at a discount off a reference price and subject to automatic renewal (including for sales made through the McAfee website and through the in-software purchase path), the following or materially similar language: "Your subscription(s) will be automatically renewed at the undiscounted subscription price in effect at the time of renewal. The subscription price is subject to change." A hyperlink will be provided that links to a webpage that includes the current undiscounted subscription price for the applicable McAfee software or McAfee will display the undiscounted subscription price (labeled the "undiscounted subscription price") for the applicable McAfee software on the point of sale webpage. Substantially similar disclosures will be added to a FAQ or informational page on McAfee's website, to notices sent by McAfee to subscribers in connection with automatic-renewal, and to McAfee's End User License Agreement.

(2) Where McAfee includes a reference price in its promotions, notices, advertisements or at the point-of-sale (including through the McAfee homepage and through the in-software purchase path), for any McAfee software product offered by McAfee to United States consumers:

(a) McAfee will use as such reference price only a price at which McAfee has offered that software product on the McAfee homepage to the public for at least 45 days within the preceding calendar quarter; and (b) McAfee will offer that software product on the McAfee homepage to the public at a non-sale price for at least 45 days within the current calendar quarter. (Settlement, ¶ 37)

### C.   Notice Program

The Settlement Agreement includes a robust notice program that is well-designed to give Class Members the best notice practicable of the Settlement Agreement, the Cash Election process and deadline, Class Counsel's fee and cost application, and Class Members' opt-out and objection rights.  As set forth below, the notice program will be administered with the help of an independent Settlement Administrator,[2] and will consist of multiple parts.  (Settlement, § III)

### 1.   Direct Notice to Class Members

Short Form Notices will be sent directly to all Class Members by email and/or U.S. Mail. To that end, within 30 days following entry of the Preliminary Approval Order, McAfee will provide the Settlement Administrator with a "Class List" that includes, for each Class Member: (a) the last known email address that McAfee possesses; (b) the last known mailing address that McAfee possesses; and (c) whether they are a member of the Auto-Renewal Class, the Reference Price Class, or both classes.[3]

Within 45 days following the Court's entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will email the appropriate Short Form Notice to each Class Member at the email address listed for them in the Class List.[4]

For any Class Member for whom the Settlement Administrator receives notice that the email Short Form Notice sent to them was not received (*i.e.*, "bounce-backs"), the Settlement

---

[2] The parties request that the Court appoint Angeion to serve as the Settlement Administrator. Angeion's experience and qualifications are set forth in the accompanying Weisbrot Decl.

[3] McAfee has an email address and mailing address on file for all Class Member accounts. Account holders' email addresses are their user names for purposes of logging into their McAfee accounts, and email is the primary means by which McAfee communicates with customers regarding their accounts.

[4] Class Members in the Auto-Renewal Class only or in both classes will be sent Short Form Notice # 1.  Class Members in the Reference Price Class only will be sent Short Form Notice # 2. (Settlement, ¶ 8, Exs. 2-5)

1   Administrator will update the mailing address for that Class Member in the Class List, through

2   the U.S Postal Service National Change of Address Database, and, within 10 days after all email

3   Short Form Notices have been sent, will mail the appropriate Short Form Notice via first class

4   U.S. mail to that Class Member at their mailing address as updated.  For any mailed Short Form

5   Notices that are returned with forwarding address information, the Settlement Administrator will

6   promptly re-mail the appropriate Short Form Notice to the new address indicated.  (Settlement, ¶¶

7   10-11)

8               **2.**        **Settlement Website and Toll-Free Number**

9       The Settlement Administrator will establish and maintain a Settlement Website,

10   www.mcafeewilliamsonsettlement.com, where Cash Election forms can be submitted

11   electronically and where Class Members can obtain additional information and access copies of

12   the Settlement Agreement, the Long Form Class Notice (substantially in the form attached as

13   Exhibit 6 to the Settlement Agreement), the operative *Williamson* and *Kirby* complaints, Class

14   Counsel's application for attorneys' fees and costs (after it is filed), and other case documents.

15   The Settlement Administrator will also establish and maintain a Toll-Free Number where Class

16   Members can obtain additional information.  Both the Settlement Website and Toll-Free Number

17   will be operational by no later than the first date that any Short Form Notices are sent to Class

18   Members.  (Settlement, ¶ 9)

19          **D.**      **Opt-Out Procedures**

20       Any person within the Auto-Renewal Class definition may request to be excluded from

21   the Auto-Renewal Class by sending a written request, clearly stating their desire to be excluded,

22   to the Settlement Administrator by the deadline proscribed by the notices.  Likewise, any person

23   within the Reference Price Class definition may request to be excluded from the Reference Price

24   Class by sending a written request, clearly stating their desire to be excluded, to the Settlement

25   Administrator by the deadline proscribed by the notices.[5]  (Settlement, § IV)

26

27

28   [5] The parties propose that the deadline to send opt-out requests be 45 days after the Notice Date set by the Court.

E.      **Objection Procedures**

Any Class Member may object to the Settlement (except to the extent it relates only to a class in which the Class Member in question is not included or from which the Class Member in question has timely and validly requested exclusion), Class Counsel's application for attorneys' fees and costs, and/or the request for Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to Class Counsel and McAfee's counsel, at the addresses listed in the Long Form Class Notice, must be postmarked by the deadline proscribed by the notices,[6] and must include the information proscribed by the Long Form Class Notice.  (Settlement, § IV)

F.      **Payment of Administrative Costs**

All fees and costs of the Settlement Administrator will be paid by McAfee in addition to (*i.e.* on top of) the other settlement benefits provided to the Class Members.  (Settlement, ¶ 5)

G.      **Payment of Attorneys' Fees and Costs**

Class Counsel will apply for an award of reasonable attorneys' fees and costs in a total amount not to exceed $2,400,000.  Any attorneys' fees and costs awarded to Class Counsel will be paid by McAfee in addition to (*i.e.*, on top of) the benefits provided to Class Members.[7] (Settlement, § VII)

H.      **Service Awards for the Plaintiffs**

Class Counsel will request service awards of $1,250 each for the two named Plaintiffs, to compensate them for their time and efforts in the Litigation.  Any service awards will be paid by McAfee in addition to (*i.e.*, on top of) the benefits provided to Class Members.  (Settlement, ¶ 41)

I.      **Release**

In exchange for the benefits provided by the Settlement Agreement, Class Members will release McAfee and related entities from any claims they may have related to the issues in these

---

[6] The parties propose that the deadline to send objections be 45 days after the Notice Date set by the Court.

[7] Class Counsel's fee and cost application, and the amount that will be requested therein, will appropriately account for Class Counsel's commitments of time and resources in prosecuting these cases, the results achieved for the Class Members, the risks that Class Counsel assumed in taking on these cases, the complexity of the issues involved, and applicable law.

1    cases.  (Settlement, § VIII)

2    IV.    **ARGUMENT**

3         A.    **The Class Action Settlement Approval Process**

4         Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-

5    step procedure for approval of class action settlements:

6              (1)    Certification of a settlement class and preliminary approval
              of the proposed settlement after submission to the Court of a written
7              motion for preliminary approval.

8              (2)    Dissemination of notice of the proposed settlement to the
              affected class members.
9
              (3)    A formal fairness hearing, or final settlement approval
10             hearing, at which evidence and argument concerning the fairness,
              adequacy, and reasonableness of the settlement are presented.
11

12   *See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq*.  This

13   procedure safeguards class members' procedural due process rights and enables the Court to

14   fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq*. (4th

15   ed. 2002) ("Newberg").

16        With this motion, Plaintiffs respectfully request that the Court take the first step in the

17   settlement approval process by granting provisional certification of the proposed classes and

18   granting preliminary approval of the proposed Settlement Agreement; appointing a Settlement

19   Administrator; directing that notice be disseminated to the Class Members pursuant to the

20   proposed notice program; and issuing the related relief requested herein.

21        B.    **Certification of the Proposed Classes is Appropriate**

22        Certification of the Auto-Renewal Class and Reference Price Class, for settlement

23   purposes only, is appropriate because Federal Rules of Civil Procedure 23(a) & 23(b)(3) are

24   satisfied.

25             1.    **Rule 23(a) is Satisfied**

26                  a.    **The Classes Are Too Numerous to Permit Joinder**

27        A case may be certified as a class action only if "the class is so numerous that joinder of

28   all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, a class with

1    at least 40 members is generally sufficiently large.  *Jordan v. County of Los Angeles*, 669 F.2d

2    1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Here, the Auto-

3    Renewal Class and Reference Price Class each include millions of McAfee customers.[8]

4                    **b.    Common Questions Are Presented**

5          Rule 23(a)(2) requires that there be one or more questions common to the class.  *See*

6    *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-*

7    *Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  As to both classes, the claims in this

8    Litigation raise common questions, including whether McAfee's representations about auto-

9    renewal pricing were material; whether McAfee's advertised reference prices were material; and

10   what effect, if any, the terms and conditions in McAfee's standardized consumer agreement have

11   on the claims alleged.

12                    **c.    The Named Plaintiffs' Claims Are Typical**

13         Rule 23(a)(3) requires that "the claims and defenses of the representative parties are

14   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not

15   require total identity between representative plaintiffs and class members.  *Armstrong v. Davis*,

16   275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied so long as the named plaintiffs'

17   claims stem "from the same event, practice, or course of conduct that forms the basis of the class

18   claims, and is based upon the same legal theory."  *Jordan*, 669 F.2d at 1321; *In re Juniper*

19   *Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if

20   they are reasonably co-extensive with those of absent class members") (citation omitted).

21         Here, the named Plaintiffs' claims stem from the same common course of conduct as the

22   claims of the Class Members.  The named Plaintiffs and all members on the Auto-Renewal Class

23   had their McAfee software subscriptions auto-renewed by McAfee at a price higher than what

24   they paid for their initial subscriptions.  Moreover, the named Plaintiffs and the members of the

25   Reference Price Class all made software subscription purchases or manual renewals subject to

26   advertised reference prices that Plaintiffs allege were misleading. The typicality requirement is

27

28   [8] According to McAfee's records, there are approximately 7.53 million persons in the Auto-
     Renewal Class and approximately 8.85 million persons in the Reference Price Class.  These
     numbers include approximately 5 million Class Members who are in both classes.

1   thus satisfied here.

2                          **d.      The Named Plaintiffs and Their Counsel Will Fairly and**
                                     **Adequately Protect the Interests of the Class Members**
3

4          Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect

5   the interests of the class.  The two-prong test for determining adequacy is: "(1) Do the

6   representative plaintiffs and their counsel have any conflicts of interest with other class

7   members?; and (2) will the representative plaintiffs and their counsel prosecute the action

8   vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

9   *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

10         First, the named Plaintiffs' interests are aligned with, and not antagonistic to, the interests

11  of the Class Members.  The named Plaintiffs have the same interest as all Class Members in

12  obtaining redress for their claims.  Second, proposed Class Counsel have extensive experience

13  litigating and settling class actions, including consumer cases.  They have demonstrated expertise

14  in handling all aspects of class actions, and are well qualified to represent the classes.  Heller

15  Decl., ¶¶ 3-9; Hattis Decl., ¶¶ 3-6, 11; Wolfson Decl., ¶¶ 2-14.  Moreover, the named Plaintiffs

16  and proposed Class Counsel remain fully committed to advancing the interests of, and obtaining

17  relief for, the Class Members, as evidenced by, *inter alia*, the terms of the proposed Settlement

18  Agreement.

19                          **2.      Rule 23(b)(3) Is Satisfied**

20         In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

21  be satisfied.  Here, Rule 23(b)(3) is satisfied, which permits a class action if the Court finds that

22  "questions of law or fact common to class members predominate over any questions affecting

23  only individual members, and that a class action is superior to other available methods for fairly

24  and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Common issues

25  predominate here.  That is particularly so given that, if the proposed Settlement Agreement is

26  approved, there will be no need for a trial, and thus manageability of the classes for trial need not

27  be considered.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

28         Moreover, a class action is superior to other methods of litigation where, as here, class

1    treatment will promote greater efficiency and no realistic alternative exists.  *See Local Joint Exec.*

2    *Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

3    2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).

4         **C.      Preliminary Approval of the Settlement Is Appropriate**

5         Public policy "strong[ly] . . . favors settlements, particularly where complex class action

6    litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

7    *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City*

8    *of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

9         "[T]he decision to approve or reject a settlement is committed to the sound discretion of

10   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

11   *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference

12   to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a

13   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

14   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

15   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

16   whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also*

17   Fed. R. Civ. P. 23(e)(2).

18        At the preliminary approval stage, a court need only find that the proposed settlement is

19   within the "range of reasonableness," such that dissemination of notice to the class and the

20   scheduling of a fairness hearing are worthwhile and appropriate.  4 Newberg § 11.25; *see also In*

21   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

22        The proposed Settlement Agreement here satisfies the standard for preliminary approval

23   because: (a) it is the product of hard-fought, arms-length negotiations between the parties,

24   reached after a thorough investigation by Class Counsel of the facts and the law; (b) it provides

25   relief that is appropriately tailored to the alleged harm, and is fair, reasonable, and adequate given

26   the claims, the relief sought, and the parties' respective litigation risks; and (c) it was negotiated

27   by, and is recommended by, experienced Class Counsel.

28

1    **1.    The Settlement Is the Product of Arms-Length Negotiations After a**
     **Thorough Investigation**

2

3        "Before approving a class action settlement, the district court must reach a reasoned

4    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

5    among, the negotiating parties."  *City of Seattle*, 955 F.2d at 1290 (internal quotations omitted).

6    Where a settlement is the product of arms-length negotiations conducted by capable and

7    experienced counsel, the court begins its analysis with a presumption that the settlement is fair

8    and reasonable.  *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9

9    (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

10       The Settlement Agreement submitted for the Court's consideration is the product of hard-

11   fought, arms-length negotiations between the parties and their well-qualified and well-informed

12   counsel.  The parties participated in a full-day mediation session and extensive ongoing

13   negotiations through an experienced and well-respected mediator, Eric D. Green of Resolutions

14   LLC, and were able to reach an agreement with the help of Prof. Green.  During the past months,

15   the parties have been working diligently to finalize the settlement papers and to select a proposed

16   Settlement Administrator.  *See supra* section II.C.  Throughout these negotiations, the parties

17   were represented by counsel experienced in the prosecution, defense and settlement of complex

18   class actions.

19       The Settlement Agreement here is also informed by Class Counsel's extensive

20   investigation and discovery regarding the legal and factual issues in the Litigation.  Among other

21   things, for approximately two years before filing suit, and continuing throughout the Litigation,

22   Class Counsel tracked, on a daily basis, pricing and other pertinent information from McAfee's

23   website and from the websites of other retailers, and conducted analyses using the information

24   gathered through this means.  Class Counsel also spoke with more than two dozen McAfee

25   customers about their experiences, carefully analyzed McAfee's consumer agreements and

26   pertinent disclosures, and conducted extensive legal research regarding the potential legal claims.

27   Class Counsel's investigation and research have continued since filing suit.   Heller Decl., ¶ 11;

28   Hattis Decl., ¶¶ 8-9.

1    Moreover, Class Counsel have engaged in significant discovery, including:  reviewing and

2    conducting a detailed analysis of class-wide McAfee pricing and transactional data for the

3    relevant time period (which included millions of individual transaction records); reviewing

4    McAfee's historical consumer agreements and other important documents; propounding and

5    responding to written discovery requests, and engaging in numerous discovery meet and confer

6    sessions.  Heller Decl., ¶ 12; Hattis Decl., ¶¶ 8-9.

7    Further, there was substantial litigation in this matter, including two fully briefed motions

8    to dismiss filed by McAfee.  In negotiating the Settlement Agreement, Plaintiffs and their counsel

9    were informed by, *inter alia*, the motions practice and the Court's ruling on the first motion.

10    **2.    The Settlement Is Fair, Reasonable, and Adequate Given the Alleged**
          **Harm and the Potential Risks of Ongoing Litigation**

11

12    The Settlement Agreement provides substantial, valuable relief that closely tracks the

13    relief sought, and is well within the "range of reasonableness."  All members of the Auto-

14    Renewal Class will receive an $11.50 Settlement Benefit without having to take any action.  They

15    will each have the choice of receiving the $11.50 benefit as cash by filing a Cash Election form,

16    or, if they do not file a Cash Election form, they will still receive the benefit in the form of an

17    $11.50 McAfee value certificate.  Moreover, the Cash Election form and submission process are

18    straightforward and user-friendly, and are designed to make submitting forms and receiving

19    payments convenient, including by providing an online claim submission option and the option of

20    receiving payments in the form of a check or a direct credit to a PayPal account.  In the aggregate,

21    the $11.50 Settlement Benefits total more than $80 million for the members of the Auto-Renewal

22    Class.

23    To put the $11.50 benefit amount in perspective, that amount represents approximately

24    one-half (1/2) of the average alleged overcharge for auto-renewal transactions during the class

25    period as estimated by Plaintiffs, a strong result.  While some members of the Auto-Renewal

26    Class had their annual subscriptions auto-renewed more than once during the class period, and

27    while Plaintiffs believe they would have a credible basis for seeking, at trial, damages based on

28    all such auto-renewals, McAfee has argued that even if Plaintiffs' auto-renewal claims had merit

1  (which McAfee disputes), customers would have at least been on notice of McAfee's auto-

2  renewal pricing after incurring their first auto-renewal charge.  Thus, there is uncertainty

3  regarding whether Plaintiffs could have recovered damages per customer beyond a single auto-

4  renewal transaction even in the proverbial "home run" scenario.[9]

5      Moreover, the Settlement includes important practice changes by McAfee addressing both

6  the auto-renewal pricing and reference price claims in the Litigation.  *See supra* section III.B.2.

7  For the auto-renewal claims, the improved disclosures provided for in the Settlement Agreement

8  will make McAfee's auto-renewal pricing policies significantly clearer, helping customers to

9  make informed choices regarding their software subscriptions.  With respect to the reference price

10  claims, the Settlement Agreement provides clear, objective terms governing the circumstances in

11  which McAfee may advertise a reference price, helping to ensure that McAfee will not advertise

12  reference prices without an appropriate basis in its actual prices, and thus closely tracking the

13  relief sought with respect to these claims.[10]

14      Further, the Settlement Agreement provides for the payment of administrative costs, and

15  Class Counsel's attorneys' fees and costs, on top of the other benefits provided for the Class

16  Members.

17      The relief obtained for Class Members represents a strong result, particularly given the

18  risks and challenges of ongoing litigation.  Among other arguments that McAfee has made and/or

19  indicated it would make if the Litigation proceeded are:  (a) its disclosures regarding auto-

20  renewal pricing would not mislead a reasonable consumer; (b) its policies regarding auto-renewal

21  pricing were disclosed in its form consumer agreements; (c) auto-renewal customers were sent

22  advance notice of the prices they would be charged and could cancel their renewed subscriptions

23  after being charged; (d) its advertised reference prices were sufficiently based on auto-renewal

24

___

25  [9]  Plaintiffs estimate that, on average, Class Members in the Auto-Renewal Class had their
26  subscriptions auto-renewed a little over two times during the class period.  Even if every one of
    these transactions were hypothetically subject to recovery, the $11.50 benefit amount would still
    represent approximately one-quarter (1/4) of the average alleged total overpayments per class
27  member.

    [10]  The claims pled regarding McAfee's reference prices sought injunctive relief only.
28  (*Williamson* Dkt. 42, ¶¶ 7, 150, 160)  The practice changes obtained for the Reference Price Class
    pursuant to the Settlement Agreement appropriately track the relief sought for these claims.

1   sales prices and/or other sales prices of the products in question; (e) customers got software

2   products worth what they paid for them; and (f) its reference prices would not mislead a

3   reasonable customer.  Moreover, McAfee has a second motion to dismiss pending in the

4   *Williamson* case.  Further, McAfee disputes whether a class trial would be manageable.  While

5   Plaintiffs believe they could overcome these challenges, they are indicative of the risks that

6   Plaintiffs and the proposed classes would face if the Litigation were to continue.  The proposed

7   Settlement Agreement provides considerable relief while allowing Class Members to avoid the

8   risks of unfavorable, and in some cases dispositive, rulings on these and other issues.  The

9   Settlement Agreement also provides another significant benefit not available if the Litigation

10   were to go to trial—prompt relief.  Proceeding to trial could add years to the resolution of this

11   Litigation, given the legal and factual issues raised and likelihood of appeals.

12   **3.      The Recommendation of Experienced Counsel Favors Approval**

13   In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

14   should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 U.S.

15   Dist. WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska Partnership*,

16   1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).  Here, proposed Class Counsel endorse the

17   Settlement Agreement as fair, adequate, and reasonable.  Heller Decl., ¶ 14; Hattis Decl., ¶ 16;

18   Wolfson Decl., ¶ 19.

19   Class Counsel have extensive experience litigating and settling consumer class actions and

20   other complex matters.  They have conducted an extensive investigation into the factual and legal

21   issues raised in this Litigation.  The fact that qualified and well-informed counsel endorse the

22   Settlement Agreement as being fair, reasonable, and adequate weighs heavily in favor of the

23   Court approving the Settlement Agreement.

24   **D.      The Proposed Forms of Notice and Notice Program are Appropriate and
        Should be Approved**

25

26   The proposed forms of notice and notice program here fully comply with due process and

27   Fed. R. Civ. P. 23.  Rule 23(c)(2)(B) requires:

28

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

In the context of a class settlement, the notice must also include a general description of the proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The proposed forms of notice here include the required information.  *See* Settlement, Exs. 2-6.  Moreover, the robust, multi-pronged proposed notice program detailed above, which includes direct notice to Class Members, is well-designed to ensure the best notice practicable under the circumstances.  *See infra* section III.C.

**E.**     **The Court Should Schedule a Final Fairness Hearing and Related Dates**

The next steps in the settlement approval process are to notify Class Members of the proposed Settlement Agreement, allow Class Members an opportunity to exclude themselves or file objections, and hold a Final Fairness Hearing.  Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for McAfee to provide the Class List to the Settlement Administrator | **[30 days after entry of Preliminary Approval Order]** |
| Notice Date | **[45 days after entry of Preliminary Approval Order]** |
| Last day for: (a) Class Counsel to file motion for entry of Final Judgment and Order; and (b) Class Counsel to file their application for attorneys' fees, costs, and Named Plaintiff service awards, with a response, if any, by McAfee due within thirty (30) days thereafter | **[15 days after Notice Date]** |
| Opt-Out Deadline | **[45 days after Notice Date]** |

| Objection Deadline | **[45 days after Notice Date]** |
|---|---|
| Cash Election Deadline | **[70 days after Notice Date]** |
| Last day for the Parties to file any responses to objections, and any reply papers in support of motion for entry of Final Judgment and Order and/or Class Counsel's application for attorneys' fees, costs, and Named Plaintiff service awards | **[14 days before Final Fairness Hearing]** |
| Final Fairness Hearing | **_____ __, 2016 at _:__ _.m.** |

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

a.  Grant preliminary approval of the proposed Settlement Agreement;

b.  Certify, for settlement purposes only, the proposed classes;

c.  Appoint Michael W. Sobol and Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Daniel M. Hattis of Hattis Law, and Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, P.C., as Class Counsel;

d.  Appoint Plaintiffs Sam Williamson and Samantha Kirby as class representatives;

e.  Approve the parties' proposed notice program, including the proposed forms of notice, and direct that notice be disseminated pursuant to such program;

f.  Appoint Angeion as Settlement Administrator, and direct Angeion to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement;

g.  Approve the parties' proposed Cash Election form, and approve the procedures set forth in the Settlement Agreement for the submission of Cash Elections, for Class Members to exclude themselves, and for Class Members to object to the Settlement;

h.  Stay all non-Settlement related proceedings in the Litigation pending final approval of the Settlement Agreement; and

1       i.  Schedule a Final Fairness Hearing and certain other dates, as

2 proposed herein, in connection with the final approval of the Settlement Agreement.

3

4 Dated:  July 14, 2016     By:  */s/ Roger N. Heller*    

             Michael W. Sobol

5             Roger N. Heller

             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

6             275 Battery Street, 29th Floor

             San Francisco, CA  94111-3336

7             Telephone: (415) 956-1000

8           By:  */s/ Daniel M. Hattis*    

9           Daniel M. Hattis

           HATTIS LAW

10          9221 NE 25th Street

           Clyde Hill, WA 98004

11          Telephone: (650) 980-1990

12          By:  */s/ Robert Ahdoot*    

13

           Tina Wolfson (State Bar No. 174806)

14          Robert Ahdoot (State Bar No. 172098)

           Theodore W. Maya (State Bar No. 223242)

15          AHDOOT & WOLFSON, P.C.

           1016 Palm Avenue

16          West Hollywood , California 90069

17          Telephone: (310) 474-9111

18          *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing document.  In compliance with General Order 45, I hereby attest that the signatories indicated above via a conformed signature have concurred in this filing.


By:     */s/ Roger N. Heller*⎽⎽⎽⎽⎽⎽⎽⎽⎽